UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

       v.                                                    **DECISION AND ORDER**
                                                            11-CR-309-A
RONALD EPPS,                                                  12-CR-305-A

                   Defendant.

---

After a jury trial with more than 30 witnesses, Defendant Ronald Epps was found guilty of a murder-related insurance fraud scheme. The jury also found Epps guilty of an arson-related insurance fraud scheme, five other arson-related offenses, a narcotics offense, and two firearms offenses.

Arguing primarily that the Court abused its discretion during the trial by admitting evidence about firearms that unfairly prejudiced the jury against him, Defendant Epps moves for a new trial pursuant to Fed. R. Crim. P. 33(a), and summarily renews a prior motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c). For the reasons that follow, Epps' motions are denied.

**The Charges.** Defendant Epps was charged in a three-count Superseding Indictment with maintaining premises for the purpose of manufacturing and distributing narcotics in violation of 21 U.S.C. § 856(a), with possessing a .32 caliber revolver in furtherance of drug trafficking and in violation of 18 U.S.C. § 924(c), and with possession while a previously-convicted felon of the same firearm in violation of 18 U.S.C. § 922(g). *See* Dkt. 11-CR-309, No. 10.

Defendant Epps lived at 21 Cascade Drive, Amherst, New York with Ms. Angela Moss, a girlfriend. The narcotics and firearms charges arose after a search warrant was executed at the 21 Cascade Drive premises as part of the investigation of the murder of Ms. Moss by a gunshot to the back of her head.

In a separately-returned Indictment, Defendant Epps was later charged with seven additional offenses, beginning with wire fraud for executing a scheme fraudulently to collect the proceeds of a life insurance policy on the life of Ms. Moss in violation of 18 U.S.C. § 1343; with mail fraud for executing a fraudulent scheme to collect proceeds of a renter's insurance policy covering the premises at 21 Cascade Drive which Epps allegedly twice intentionally damaged by fire, in violation of 18 U.S.C. § 1341; and with five specific arson-related offenses in connection with the two fires. The Indictment charging these seven offenses was returned on September 27, 2012. *See* Dkt. 12-CR-305, No. 1.

The two Indictments were consolidated for trial. Defendant Epps conditionally agreed that consolidation was proper, provided the murder-related insurance fraud charge was severed and tried separately to avoid unfair prejudice to him. He also argued that the felon-in-possession charge should be bifurcated to avoid unfair prejudice. The Court consolidated the Indictments over Epps' conditional objections. *See* Dkt. 12-CR-305, No. 74.

**DISCUSSION**

The Federal Rules of Criminal Procedure authorize a defendant to move for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a); *United States*

v. James, 712 F.3d 79, 107 (2d Cir. 2013).  The Rule "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992).  A motion for a new trial under Rule 33 permits the court to weigh the evidence and credibility of witnesses.  Sanchez, 969 F.2d at 1413.

"To grant [a Rule 33] motion, '[t]here must be a real concern that an innocent person may have been convicted.' " United States v. Aguiar, 737 F.3d 251, 264 (2d Cir. 2013) (quoting United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 1997) (alteration omitted).  Particularly "[w]here an evidentiary ruling is the basis of a defendant's Rule 33 motion, the question is not whether there was error in the evidentiary ruling, but whether there is 'manifest injustice' and a real concern that an innocent person may have been convicted." United States v. Soto, No. 12 CR 556 (RPP), 2014 WL 1694880, at *5 (S.D.N.Y. Apr. 28, 2014), aff'd sub nom., United States v. Ramos, 622 Fed.Appx. 29 (2d Cir. 2015).

**Evidence of Other Firearms.**  Defendant Epps contends that witness testimony and other evidence about his possession of firearms other than the single .32 caliber revolver involved in the two firearms offenses with which he was charged so inflamed the jury against him that his trial was a miscarriage of justice.  The testimony about other firearms was not nearly as prejudicial to Epps as testimony about his own numerous statements in the aftermath of the murder and other evidence of his guilt, however.  The Court finds there was no manifest injustice caused by admission of the evidence about firearms that were not the subject of the

two firearms offenses with which the Defendant was charged.

The trial evidence showed Defendant Epps drove Ms. Moss to her job at a health-care facility on California Road in Orchard Park, New York, on August 27, 2009.  Later that evening, Epps asked a friend, Daniel Robertson, to follow him back to the health-care facility so the Defendant could leave Ms. Moss' car in the parking lot.  He parked Ms. Moss' car in the parking lot off California Road, locked it, and left with Mr. Robertson in Robertson's car.

A short time later, Defendant Epps met another girlfriend, Tameka Carter, at his residence at 21 Cascade Drive.  Epps changed into a dark-colored sweat suit, and Ms. Carter saw a bulge near a front pocket.  The Defendant borrowed Ms. Carter's car, and dropped her at her home at about 10:15 p.m.  He had a backpack with him.

Ms. Moss left work at the health-care facility on California Road in Orchard Park at approximately 11:00 p.m.  Just before 11:00 p.m., a co-worker had seen a dark sedan waiting nearby.  At approximately 12:15 a.m., August 28, 2009, another co-worker saw Ms. Moss's car abandoned on California Road, and at about 6:10 a.m., Ms. Moss' body was discovered beside California Road by co-workers, approximately 1000 feet from the driveway leading to the health-care facility.  Ms. Moss was killed by a 9 millimeter gunshot to the back of her head.

Ms. Moss' car was parked along California Road, a short distance from her body.  The police later located a witness living near where Ms. Moss' body was found who had heard a noise "like a firecracker" between 11:00 p.m. and 11:05 p.m.

Police never recovered the murder weapon.

At approximately 11:34 p.m. on August 27, 2009, Defendant Epps used his cell phone to call Tameka Carter, and said he was outside her house to return her car. The Defendant then had Ms. Carter drive him back to 21 Cascade Drive, but he left the backpack in Ms. Carter's car. Cell phone records showed that the Defendant's phone was off, or otherwise without power, from 10:15 p.m. until about 11:34 p.m., when he used it in the vicinity of Carter's house. The records showed the Defendant's returned to the vicinity of his home at about 11:55 p.m. They tended to show that the Defendant was not at home during the time of the murder of Ms. Moss, despite what he later told police.

At approximately 1:53 a.m., less than two hours after the loud noise was heard on California Road, Defendant Epps sent a text message to Daniel Robertson saying, "Please call me when u get this text I don't care what time." At approximately 5:51 a.m., the Defendant called Mr. Robertson's girlfriend looking for Robertson. Eventually, at about 6:18 a.m., the Defendant spoke to Mr. Robertson on the phone. During the call, the Defendant asked Mr. Robertson to go to Ms. Carter's house and to pick up a bag, but not to look inside the bag. At about the same time, the Defendant called Ms. Carter and told her that Mr. Robertson was coming to her house to pick up the bag. Soon thereafter, Mr. Robertson picked up the bag, from Ms. Carter at her house. The Defendant later admitted to Mr. Robertson the bag was a "bag of guns."

After Ms. Moss' body was found on the morning of August 28, 2009, police

conducted a search of Defendant Epps' residence at 21 Cascade Drive and seized the .32 caliber revolver underlying the two charged firearms offenses was found and seized. Sometime after that search, Mr. Robertson took the bag of guns he had retrieved from Ms. Carter back to the Defendant at 21 Cascade Drive. The Defendant instructed Mr. Robertson to take the bag of guns to a house in the Bailey-Delevan area of Buffalo, New York. After Mr. Robertson refused, Ricky Kearney, another friend of the Defendant's, agreed to do so. Mr. Kearney then took the bag to the Bailey-Delevan area, and gave it to a woman on behalf of the Defendant.

Evidence about Defendant Epps' actions and the statements involving the so-called "bag of guns" tended to explain why the 9 millimeter firearm used to shoot Ms. Moss in the back of the head was not recovered by law enforcement when they searched Defendant's residence. It was more relevant because defense counsel effectively challenged the quality of the murder investigation during the trial. The Court gave a limiting instruction to the jury to diminish the risk of unfair prejudice to the Defendant.

The two firearms offenses with which Defendant Epps was charged — possession of the .32 caliber revolver in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) and possession of the same firearm in violation of 18 U.S.C. § 922(g) because he possessed it even though he is a convicted felon — both specified the .32 caliber revolver that was the subject of the charges. There was ample evidence to support the two firearms charges, and the Court's charges to the

jury on those offenses and the verdict sheet specified the .32 caliber revolver.  The Court's limiting instructions and its general instructions admonished the jury to deliberate upon each charge separately, and those instructions required no mental acrobatics on the part of jurors.  *See e.g.*, *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994) (citing *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir. 1932) (Hand, J.)).  After careful consideration, the Court concludes the so-called "bag of guns" evidence did not give rise to a probability the jury ignored the Court's instructions during deliberations.  The Defendant's motion for a new trial is denied.

Defendant Epps also argues that the two firearms charges against him were constructively amended by the admission of the evidence of other firearms admitted during his trial.  In general, a constructive amendment occurs when the proof and instructions on the law "modify essential elements of the offense charged to the point where there is a substantial likelihood that the defendant may have been convicted on an offense other than the one charged by the grand jury." *United States v. Vebeliunas*, 76 F.3d 1283, 1290 (2d Cir. 1996).  In this case, although proof of firearms admitted to prove the fraudulent scheme to collect life insurance proceeds was not admitted to prove Epps guilty of possessing a firearm in furtherance of drug trafficking, or of being a felon in possession of a firearm, the firearms charges gave the Defendant specific and ample notice of the core of criminality with which he was charged in those offenses.  The charges in the Superseding Indictment, the jury instructions, and the Court's verdict sheet sufficiently protected the Defendant from unfair prejudice.

Defendant Epps also argues the so-called "bag of guns" testimony was improperly admitted under Fed. R. Evid. 404(b), and that it was evidence of propensity and bad character that unfairly prejudiced the jury against him. He suggests retroactive misjoinder. Having duly considered all of the Defendant's arguments about the testimony and evidence during his trial of other guns, the Court finds those arguments to be without merit. The Court is firmly persuaded the Defendant's convictions were not a miscarriage of justice, and his motion for a new trial is denied.

**Restriction of Opening Statement and Ineffective Counsel.** Defendant Epps argues his right to challenge evidence against him was violated when the Court intervened just before the parties' opening statements and directed Defendant's counsel not to mention to the jury that the murder victim, Angela Moss, may have been affiliated with a motorcycle gang, and that a man that may have been romantically linked to Ms. Moss had at been seen near the scene of a potentially gang-related murder that occurred within days of her murder. The Court raised the issues after viewing potential trial exhibits marked by the Defendant. The Court first asked the prosecutor why prospective jurors were not asked during jury selection about biases concerning motorcycle clubs. The prosecutor then objected to the exhibits on relevance grounds, and the Court asked defense counsel to address the relevance of the topics before opening statements.

Defendant Epps' counsel proffered in response to the Court's inquiry that counsel intended to suggest to the jury during an opening statement that a

motorcycle gang might have somehow been involved in Angela Moss' murder. Counsel's proffer failed to show a rational connection between admissible evidence and the murder of Ms. Moss. The Court found that mention of these topics, without an evidentiary basis, would confuse the jury and invite speculation, especially because the Court repeatedly instructs juries to disregard any information from any source other than admissible evidence. It is well settled that the Court has very broad discretion over the content of opening statements. *See United States v. Salovitz*, 701 F.2d 17 (2d Cir. 1983). It was a sound exercise of the Court's discretion to direct counsel not to mention inadmissible, confusing, and speculative topics during counsel's opening statement.

To the extent the Court's ruling required counsel to alter counsel's opening statement, counsel bears the responsibility for electing not to include anything about motorcycle gangs or a potentially-related murder among the topics that the Court addressed *in limine*. Contrary to counsel's arguments in support of a new trial, counsel was neither restricted from later seeking to use whatever admissible evidence on these topics that may have been available to the Defendant, nor was counsel restricted from later seeking to cross-examine a witness about these topics. Counsel for Defendant was only directed by the Court to raise and address with the Court any evidence or questions concerning motorcycle gangs or potentially-related murders outside the presence of the jury before raising the topics in the presence of the jury. In any event, counsel did not later seek leave of the Court to address either

topic with a witness during the trial.[1]

Defendant Epps, through his counsel, now also suggests that counsel's failure to take further steps to put the topics of motorcycle gangs, a potentially-related murder, and the possibility that others had a motive to murder Angela Moss before the jury was potentially ineffective assistance of counsel. It is well-settled that to establish ineffective assistance of counsel, a defendant must: (i) show that his counsel's representation "fell below an objective standard of reasonableness" under "prevailing professional norms"; and (ii) show that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984); *United States v. Torres*, 129 F.3d 710, 716 (2d Cir. 1997); *United States v. Arnold*, 126 F.3d 82, 89 (2d Cir. 1997).

The "reasonableness," prong of the *Strickland* test requires a "highly deferential" review of the attorney's conduct, 466 U.S. at 689, and "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689).

---

[1] Defendant Epps' counsel later inaccurately complained that the Court had summarily precluded evidence that others might have had a motive to murder Angela Moss. For example, counsel asserted in an unrelated filing that "[t]he Defendant intended to offer proof that Angela Moss, within a week of her murder, had a confrontation at a party at the motorcycle club[,] that she called the Defendant and he drove down to the club and confronted a man who was harassing her." Dkt. No. 56, p. 4. However, the Court did not preclude any evidence, and counsel did not seek permission to raise these topics with any witness, or to call a witness in a defense case to testify about these topics.

The second, or "prejudice," prong of the *Strickland* test requires a court to determine "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994); *see also Strickland*, 466 U.S. at 691-92.  Defendant Epps fails to meet his burden under this rigorous standard, and the Court has no trouble presuming that Defendant's counsel reasonably chose the specific means of challenging the evidence offered against the Defendant that were employed.  Moreover, because it would have been improper for Defendant's counsel to have sought to confuse the jury with speculation that others might have had a motive to murder Angela Moss, it was not ineffective representation to refrain from doing so.[2]

Defendant Epps also complains his counsel was not permitted to mention during the opening statement that the local District Attorney had not prosecuted anyone for murdering Angela Moss.  The Court finds it had properly ruled that whether a state or local prosecuting agency charged a related offense was not relevant to the charges Defendant faced.  Especially because defense counsel had substantial leeway to attempt to sow doubts about the quality of the law enforcement investigation underlying the evidence offered against the Defendant, potential questions regarding inaction on the part of the local District Attorney invited

---

[2] Because the Court finds the argument of ineffective assistance of counsel without merit, the Court expects counsel has no conflict of interest or potential conflict of interest in continuing to represent the Defendant.  To obviate an unnecessary collateral attack on the Defendant's sentence, counsel shall advise the Court if that expectation is false.

speculation and were improper. The Defendant was not deprived of a fair trial because of this *in limine* ruling, or because of the ruling combined with the totality of the Court's other rulings.

**DNA on a Discharged Shell Casing.** Defendant Epps argues that trial testimony by a DNA analyst that she recovered DNA consistent with Angela Moss' on a shell casing recovered near where Ms. Moss' body was found involved a violation of the prosecutors' obligations to disclose exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Defendant complains that prosecutors should have disclosed that the analyst had never before successfully identified a DNA sample from a discharged shell casing, and that the analyst believed it highly unusual to have done so. The Defendant contends he would have sought a hearing pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and would have sought to exclude the opinion testimony as inadmissible under the *Daubert* standard. However, the DNA analyst's opinion testimony identifying Ms. Moss' DNA on the spent shell casing was a extremely small part of the proof against the defendant. The testimony does not come close to "undermining confidence in the outcome of the trial," *United States v. Bagley*, 473 U.S. 667, 682 (1985), even if a challenge to the opinion testimony would have been successful. Accordingly, the Court finds no *Brady* violation occurred in the prosecutor's failure to disclose more information about the basis for the DNA analyst's opinion.

**The Renewed Motion for a Judgment of Acquittal.** Defendant Epps has also summarily renewed his motion for acquittal pursuant to Fed. R. Crim. P. 29(c).

A defendant challenging the sufficiency of the evidence bears a "heavy burden." *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013). The Court must uphold a jury's verdict if, "drawing all inferences in favor of the prosecution and viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *United States v. Santos*, 449 F.3d 93, 102 (2d Cir. 2006) (internal quotation marks omitted)). Moreover,

> [t]o "avoid usurping the role of the jury," the Court must resolve all issues of credibility in favor of the jury's verdict. The Court must also "credit [] every inference that the jury might have drawn in favor of the government," because "the task of choosing among competing, permissible inferences is for the [jury], not for the reviewing court."

*Cuti,* 720 F.3d at 461-62 (alterations in original) (citations omitted). The Court reviews the "sufficiency of the evidence . . . independently for each count, ignoring the jury's determination [whether] evidence on another count was []sufficient." *United States v. Jespersen*, 65 F.3d 993, 998 (2d Cir. 1995) (quotation omitted from *United States v. Powell*, 469 U.S. 57, 61–69 (1984)). Defendant Epps' post-trial renewal of his Rule 29 motion relies upon his arguments that the Court abused its discretion in admitting the evidence against him that is the subject of his motion for a new trial. For the reasons stated above, the Court disagrees, and for substantially the reasons stated when the Court previously denied the Defendant's motion for judgment of acquittal, the motion is denied.

## CONCLUSION

For the reasons stated above, the Court denies the motions of the Defendant, Ronald Epps, for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c) and for a new trial pursuant to Fed. R. Crim. P. 33.  Sentencing shall be June 28, 2016 at 12:30 p.m.

**SO ORDERED.**

                                                                                  s/Richard J. Arcara
                                          HONORABLE RICHARD J. ARCARA
                                          UNITED STATES DISTRICT JUDGE

DATED:  May 19, 2016