UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RONALD EPPS,

                              Petitioner,

          v.

UNITED STATES OF AMERICA,

                              Respondent.

11-CR-309-A
12-CR-305-A
19-CV-1021-A
**DECISION AND ORDER**

---

*Pro se* petitioner Ronald Epps, a prisoner in federal custody, has filed a Motion to Vacate, Set Aside, or Correct the Sentence Under 28 U.S.C. § 2255 ("§ 2255 Motion") (11-CR-309, Dkt. No. 81; 12-CR-305, Dkt. No. 122) as well as a filing he captioned as a Motion for Compassionate Release (11-CR-309, Dkt. No. 101; 12-CR-305, Dkt. No. 139). For the reasons set forth below, both motions are **DENIED**.

## BACKGROUND

### I.    Prior Proceedings

Epps was charged in a three-count Superseding Indictment (#11-CR-309-A) with maintaining premises for the purpose of manufacturing and distributing narcotics in violation of 21 U.S.C. § 856(a), with possessing a .32 caliber revolver in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c), and with possession while a previously convicted felon of the same firearm in violation of 18 U.S.C. § 922(g). *See*, 11-CR-309, Dkt. No. 10.

Epps lived at 21 Cascade Drive, Amherst, New York with Ms. Angela Moss, a girlfriend.  The narcotics and firearms charges arose after a search warrant was

executed at the 21 Cascade Drive premises as part of the investigation of the murder of Ms. Moss by a gunshot to the back of her head.

In a separately-returned Indictment (# 12-CR-205-A), Epps was later charged with seven additional offenses, beginning with wire fraud for executing a scheme fraudulently to collect the proceeds of a life insurance policy on the life of Ms. Moss, in violation of 18 U.S.C. § 1343; with mail fraud for executing a fraudulent scheme to collect proceeds of a renter's insurance policy covering the premises at 21 Cascade Drive, after such premises had twice been damaged by intentionally set fires, in violation of 18 U.S.C. § 1341; and with five specific arson-related offenses in connection with those two fires.  The Indictment charging those seven offenses was returned on September 27, 2012.  *See* 12-CR-305, Dkt. No. 1.

The two Indictments were consolidated for trial.  Counsel for Epps conditionally agreed that consolidation was proper, provided: (1) that the murder-related insurance fraud charge was severed from the other charges in 12-CR-305-A; (2) that the severed murder-related insurance fraud charge be consolidated with the gun and drug charges set forth in 11-CR-309-A; and (3) that the murder/gun and drug charges contained in the consolidated indictments be tried separately from the insurance fraud/arson charges to avoid unfair prejudice to him.  *See,* 12-CR-305-A, Dkt. No. 37, ¶¶ 5-20. Defense counsel also argued that the felon-in-possession charge should be bifurcated to avoid unfair prejudice.  Id., at ¶ 14. The Court consolidated the Indictments over Epps' attorney's conditional objections. *See* 12-CR-305, Dkt. No. 74.

A jury trial was conducted before this Court, and the jury returned guilty verdicts on all counts.  Epps was sentenced to an aggregate term of 60 years in prison; the

final judgment was entered on January 4, 2017. Epps filed a Notice of Appeal on January 17, 2017. On appeal, Epps raised eight different issues including, *inter alia*, that this Court erred in denying his motion to sever the wire fraud count (which related to Moss's murder and her life insurance policy) from the mail fraud count (which related to arson and fire insurance) and other arson-related counts. *United States v. Epps*, 742 F. App'x 544, 547 (2d Cir. 2018). On August 22, 2018, the Second Circuit issued an Order affirming the judgment of this Court. *See*, *United States v. Epps*, 742 F. App'x 544.

On August 2, 2019, Epps, *pro se*, timely filed the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, arguing: (1) that trial counsel, Cheryl Meyers-Buth, Esq., provided ineffective assistance of counsel during trial and related to pre-trial issues; and (2) that the Court was biased against him and should be recused.  *See*, 11-CR-309, Dkt. No. 81. The government responded. *See*, 11-CR-309, Dkt. No. 82. Subsequently, on December 4, 2023, Epps filed a handwritten motion captioned as a Motion for Compassionate Release. *See*, 11-CR-309, Dkt. No. 101; 12-CR-305, Dkt. No. 139.

## II.    The Trial Evidence:[1]

The trial evidence showed that Epps drove Ms. Moss to her job at a health-care facility on California Road in Orchard Park, New York, on August 27, 2009.  Later that evening, Epps asked a friend, Daniel Robertson, to follow him back to the health-care facility so Epps could leave Ms. Moss' car in the parking lot.  He parked Ms. Moss' car

---

[1] The facts set forth herein are taken from this Court's Decision and Order denying Epps' motion for a judgment of acquittal and a new trial.  Dkt. No. 61.

in the parking lot off California Road, locked it, and left with Mr. Robertson in Robertson's car.

A short time later, Epps met another girlfriend, Tameka Carter, at his residence at 21 Cascade Drive.  Epps changed into a dark-colored sweat suit, and Ms. Carter saw a bulge near a front pocket.  Epps borrowed Ms. Carter's car, and dropped her at her home at about 10:15 p.m.  Epps had a backpack with him.

Ms. Moss left work at the health-care facility on California Road in Orchard Park at approximately 11:00 p.m.  Just before 11:00 p.m., a co-worker saw a dark sedan waiting nearby.  At approximately 12:15 a.m., August 28, 2009, another co-worker saw Ms. Moss's car abandoned on California Road, and at about 6:10 a.m., Ms. Moss's body was discovered, a short distance from her vehicle, beside California Road by co-workers, approximately 1000 feet from the driveway leading to the health-care facility.  Ms. Moss was killed by a 9 mm gunshot to the back of her head.  The police later located a witness living near where Ms. Moss's body was found who had heard a noise "like a firecracker" between 11:00 p.m. and 11:05 p.m.  Police never recovered the murder weapon.

At approximately 11:34 p.m. on August 27, 2009, Epps used his cell phone to call Tameka Carter, and said he was outside her house to return her car.  Epps then had Ms. Carter drive him back to 21 Cascade Drive, but he left the backpack in Ms. Carter's car.  Cell phone records showed that Epps's phone was off, or otherwise without power, from 10:15 p.m. until about 11:34 p.m., when he used it in the vicinity of Carter's house.  The records showed Epps returned to the vicinity of his home at

about 11:55 p.m., indicating that Epps was not at home during the time of the murder of Ms. Moss, despite what he later told police.

At approximately 1:53 a.m., less than two hours after the loud noise was heard on California Road, Epps sent a text message to Daniel Robertson saying, "Please call me when u get this text I don't care what time." At approximately 5:51 a.m., Epps called Mr. Robertson's girlfriend looking for Robertson. Eventually, at about 6:18 a.m., Epps spoke to Mr. Robertson on the phone. During the call, Epps asked Mr. Robertson to go to Ms. Carter's house and to pick up a bag, but not to look inside the bag. At about the same time, Epps called Ms. Carter and told her that Mr. Robertson was coming to her house to pick up the bag. Soon thereafter, Mr. Robertson picked up the bag, from Ms. Carter at her house. Epps later admitted to Mr. Robertson the bag was a "bag of guns."

After Ms. Moss's body was found on the morning of August 28, 2009, police conducted a search of Epps's residence at 21 Cascade Drive and found and seized the .32 caliber revolver underlying the two charged firearms offenses set forth in Indictment 11-CR-309-A. Sometime after that search, Mr. Robertson took the bag of guns he had retrieved from Ms. Carter back to Epps at 21 Cascade Drive. Epps instructed Mr. Robertson to take the bag of guns to a house in the Bailey-Delevan area of Buffalo, New York. After Mr. Robertson refused, Ricky Kearney, another friend of Epps, agreed to do so. Mr. Kearney then took the bag to the Bailey-Delevan area and gave it to a woman on behalf of Epps.

Evidence about Epps's actions and the statements involving the so-called "bag of guns" tended to explain why the 9 mm firearm used to shoot Ms. Moss in the back

of the head was not recovered by law enforcement when they searched Epps's residence.  Its relevancy was enhanced since defense counsel effectively challenged the quality of the murder investigation at trial.  The Court gave a limiting instruction to the jury to diminish the risk of unfair prejudice to Epps.

In this case, although proof—including Epps's own statements—of the "bag of guns" was admitted as relevant to the fraudulent scheme to collect life insurance proceeds, it was not admitted to prove Epps guilty of possessing a firearm in furtherance of drug trafficking, or of being a felon in possession of a firearm, and the jury instructions and the Court's verdict sheet were crafted to protect Epps from unfair prejudice.

## DISCUSSION

### I.     Motion to Vacate, Set Aside or Correct Sentence

#### A.  Legal Standard - Section 2255

Under 28 U.S.C. § 2255, an individual convicted of federal crimes may petition a court to vacate, set aside, or correct his sentence. "[C]ollateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). Where

6

a petitioner is *pro se*, as is the case here, the Court "must . . . construe his pleadings liberally and in a way that raises the strongest arguments the pleadings suggest." *Donaldson v. United States*, No. 09-CR-321A, 2018 WL 703102, at *2 (W.D.N.Y. Feb. 5, 2018) (citation omitted). However, *pro se* litigants are "not exempt from compliance with the relevant rules of procedural and substantive law." *Carrasco v. United States*, 190 F. Supp. 3d 351, 352 (S.D.N.Y. 2016) (internal quotation marks omitted).

In ruling on a § 2255 petition, district courts are to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the [incarcerated individual] is entitled to no relief." 22 U.S.C. § 2255(b). A hearing is also not necessary "where the allegations are vague, conclusory, or palpably incredible." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (internal quotation marks omitted); *see also Rosa v. United States*, 170 F. Supp. 2d 388, 398 (S.D.N.Y. 2001) (no hearing necessary "where (1) the allegations of the motion, accepted as true, would not entitle the petitioner to relief or (2) the documentary record, including any supplementary submissions such as affidavits, render a testimonial hearing unnecessary.") Therefore, to obtain a hearing under § 2255, "the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez*, 722 F.3d at 131. "[A] district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009); *see also Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003) (in § 2255 motions, district court is

7

permitted to decide disputed facts based on written submissions). And "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'" *Puglisi*, 586 F.3d at 213 (quotations omitted).

## B. Legal Standard - Ineffective Assistance of Counsel

A petitioner asserting ineffective assistance of counsel in a § 2255 petition must establish that (1) his "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As for the first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, viewed at the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (internal quotation marks omitted). There is a strong presumption that counsel's conduct is within the range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. As for the second prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## C. Legal Analysis

### 1. Defense Counsel's Strategy Of Conditionally Agreeing To The Consolidation Of The Indictments, Provided The Murder-Related Insurance Fraud Charge Was Severed And Tried Separately Was Reasonable

Initially, Epps contends that his attorney, Cheryl Myers-Buth, Esq., was constitutionally ineffective for failing to object to the consolidation for trial of the two

indictments against him.  *See*, 12-CR-305, Dkt. No. 122, pp. 21-27; 11-CR-309, Dkt.
No. 81, pp. 21-27.   At the outset, however, the Court observes that it is factually
inaccurate for Epps to assert that counsel merely failed to object to the consolidation
of the two indictments which were returned against him. Rather, defense counsel's
endorsement of the government's motion to consolidate the indictments for trial was
expressly conditioned on defense counsel's request that those charges involving
firearms (*i.e.,* Counts One through Three of Indictment 11-CR-309 and Count One of
Indictment 12-CR-305) be tried separately from those counts which did not involve
guns (*i.e.,* Counts Two through Seven of Indictment 12-CR-305).  *See* 12-CR-305,
Dkt. No. 37, ¶¶ 5-13, 17-20.

Rule 13 of Federal Rules of Criminal Procedure provides:

> The court may order that separate cases be tried together as though
> brought in a single indictment or information if all offenses and all
> defendants could have been joined in a single indictment or information.

*Id*.  The standard to determine whether offenses "could have been joined in a single
indictment" is contained in Rule 8(a) of the Federal Rules of Criminal Procedure, which
provides, in pertinent part:

> . . . offenses may be joined in a single indictment when they are (1) based
> upon the same act or transaction, or (2) based on two or more acts of
> transactions connected together or constituting parts of a common
> scheme or plan, or (3) of the same or similar character.

*Id*.  While counsel for Epps did not oppose that the two indictments be consolidated
for trial, counsel did vigorously maintain that the murder-related insurance fraud
offense was too dissimilar, and the proof too inflammatory, to remain joined with the

9

other offenses and that such offense, therefore, should be severed from Indictment #12-CR-305-A and joined with the drug and gun charges in Indictment #11-CR-309-A. *See* 12-CR-305, Dkt. No. 37, ¶¶ 13, 17-20.

Rule 14(a) of the Federal Rules of Criminal Procedure provides that, "[i]f the joinder of offenses . . . appears to prejudice a defendant . . ., the court may order separate trials of counts, . . ., or provide any other relief that justice requires." *Id*. Generally, a defendant seeking severance bears the burden of showing that prejudice from a joint trial "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials". *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). In fact, Rule 14 does not require severance even if prejudice is shown. *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988). Instead, the defendant must show "prejudice so substantial as to amount to a miscarriage of justice". *Id*. at 563.

Here, the charges set forth in Indictment 11-CR-309 (involving guns and drugs) were factually intertwined not only with one another but also with the fraud, homicide, and arson charges set forth in Indictment 12-CR-305. The offenses in both indictments share common evidence regarding Epps' relationship with the decedent Ms. Moss, and their residence together at 21 Cascade Drive. The drug and firearms offenses arose directly out of seizures occurring—or leads generated—during the earliest stages of law enforcements' murder investigation at Ms. Moss's shared residence with Epps. At trial, the government's proof demonstrated that Epps was dependent on Ms. Moss for economic support, but as he became involved with another woman, his

relationship with Ms. Moss was ending—and with it the support he received from Ms. Moss.  It was this need for money that provided Epps's motive to commit both the murders and the arsons.  Such undertakings involved an effort by Epps to devise and execute a scheme to defraud State Farm Life and Accident Assurance Company ("State Farm") by first attempting to collect on the proceeds of an insurance policy on Ms. Moss' life—by means of murder—and next attempting to collect on the proceeds of an insurance policy on the premises at 21 Cascade Drive that they shared—by means of arson.

As noted, instead of objecting to the consolidation of the two indictments, defense counsel prior to trial sought to sever Count One of 12-CR-305 (charging Epps with intentionally killing his girlfriend, Angela Moss, and then submitting a claim for her life insurance proceeds) from the remaining six counts of that indictment, all of which involved his attempt—over one year after Ms. Moss' death—to damage to his apartment and a neighboring apartment by starting fires.  *See*, 12-CR-305, Dkt. No. 37, ¶¶ 5-20. In seeking such severance, defense counsel argued that allowing the jury to consider Epps's involvement in a homicide at the same time it was considering his alleged involvement in a separate arson charge the following year would be highly prejudicial, especially where the two crimes have nothing to do with each other. Although they are alleged to have been committed by the Epps, defense counsel maintained that there is no common scheme or plan. *Id*. Defense counsel further pointed out that the (homicide) in Count One occurred on August 27, 2009, while the

11

arsons (Counts Two through Seven) occurred over a year later on October 13, 2010, and October 15, 2010." *Id*.

Notably, in not objecting to the consolidation of the two indictments, defense counsel stated as follows:

> Because of the continuity of events between August 27, 2009 and the immediate aftermath of the seizure of contraband from Mr. Epps' residence and the police investigation, ***Defendant agrees that count 1 of 12-CR-305 and 11-CR-309 are properly joined for trial and therefore, Defendant will not object to the Government's motion in that regard***.

*Id*., at ¶13 (emphasis added).  Such statement makes clear that counsel's strategy in otherwise not objecting to the consolidation of the two indictments was predicated on her request that the gun and drug charges *be tried with* the fraud/homicide charge and that such charges—which involved guns—*be tried separately* from the fraud/arson charges—which did not involve guns.  In short, defense counsel did request that the Court hold two trials be held. *Id*., at ¶19 ("By granting Defendant's motion, the Court would preside over two trials. That is exactly how the Government foresaw events unfolding when it separately presented cases to the grand jury. Up to this point, 11-CR-309 has always been on a different trial track than 12-CR-305 with the latter assumedly to be tried first. Therefore, there is no prejudice to the Government in continuing to view these matters as requiring two trials").  Additionally (and appropriately), defense counsel requested that the felon-in-possession of a firearm count be bi-furcated from the other counts in 11-CR-309. *Id*., at ¶14.

In view of the foregoing, defense counsel's strategic decision to agree to the consolidation of the two indictments in hopes that it would influence the Court to grant her motion to sever and allow her to try at least one indictment free of any evidence regarding Epps's possession of firearms was reasonable. Notwithstanding that such strategy was rendered unsuccessful by virtue of this Court's decision to consolidate and not severe, *see*, 12-CR-305, Dkt. No. 40, such outcome hardly renders defense counsel's performance constitutionally ineffective.

Court's "will not second-guess trial counsel's defense strategy simply because the chosen strategy has failed." *United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987). Clearly, defense counsel made an informed and strategic decision to proceed in the way she did. "While this may not meet [Epp]'s standards as a 'Monday morning quarterback[],' *United States v. McGriff*, 678 F.Supp. 1010, 1014 (E.D.N.Y. 1988), it is clear that counsel 'exercised professional discretion in deciding [to proceed as she did.]". *Oppedisano v. United States*, No. 13-CV-0161 JS, 2013 WL 4052828, at *4 (E.D.N.Y. Aug. 12, 2013)(quoting *DiTommaso*, 817 F.2d at 215).

Having presided over the trial of this matter and witnessed first-hand the amount of evidence the government had amassed against Epps as well as defense counsel's conduct—in filing appropriate pretrial and Rule 29 motions, cross-examining government witnesses, presenting defense witnesses, objecting to items of evidence, and delivering a sound summation—this Court easily concludes that no constitutional error occurred. Surely, it may not be said that trial counsel's conduct fell outside the

13

"wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Epps received effective assistance of counsel.

### 2. The Court Was Not Biased Against Epps

Epps also asserts that this Court was biased against him. *See*, 11-CR-309, Dkt. No. 81, pp. 27-34.  In support of that assertion, Epps argues that the Court was biased against him because of evidentiary rulings made during the trial. Epps specifically references the Court's decision to preclude evidence related to the victim, Angela Moss being connected to a motorcycle gang and repeatedly refers to the Court's analogizing such argument by the defense—outside the presence of the jury—to a widely-known argument raised in the O.J. Simpson trial. *Id.*, at 14, 15, 27, 28.  In fact, the Court ruled that the relevancy of the evidence sought to be introduced by the defense had not yet been established but did state the issue could be revisited should the defense demonstrate the evidence was relevant through testimony during the trial. Epps failed to do so.

Notably, this issue regarding the admissibility of such evidence was raised by Ms. Meyers Buth in Epps's direct appeal and was rejected by the Second Circuit. *United States v. Epps*, 742 F. App'x at 549. "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). It is therefore "well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" *United States v. Sanin*, 252 F.3d 79, 83

(2001) (quoting *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992)); *see also, e.g., Foster v. Chatman*, 578 U.S. 488, 519, 136 S.Ct. 1737, 195 L.Ed.2d 1 (2016) (Alito, J., concurring) (noting that "as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal"); *Williams v. United States*, 712 F. App'x 50, 52 (2d Cir. 2017) (same).

With the direct appeal establishing the legal correctness of this Court's evidentiary ruling, this Court further finds that a single, apt analogy referenced by this Court— outside the presence of the jury—in conjunction with its ruling does not, based on Epps's disapproval alone, constitute partiality.  "[A] court's careful enforcement of its rulings does not reflect partiality," *United States v. Wedd*, 993 F.3d 104, 118 (2d Cir. 2021), and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Here, beyond rulings with which he disagrees, there is simply nothing in the record to support Epps' assertion that this Court was biased against him.

## II.    EPPS IS NOT ENTITLED TO COMPASSIONATE RELEASE

Finally, Epps has also filed a *pro se* handwritten document captioned as a Motion for Compassionate Release (11-CR-309, Dkt. No. 101; 12-CR-305, Dkt. No. 139).[2]

---

[2] By text order dated January 4, 2023, this Court directed the government to respond to Petitioner's *pro se* Motion for Compassionate Release on or before February 2, 2024. *See*, 11-CR-309, Dkt. No. 103; 12-CR-305, Dkt. No. 141.  In what can only be characterized as an unresponsive—and completely unhelpful—response, the Government incorrectly treats the Motion for Compassionate Release as a second or successive §2255 motion. In it, the government further incorrectly asserts that this Court

A.  **Legal Standard – Compassionate Release**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)). The First Step Act, which modified 18 U.S.C. § 3582(c), allows the Court to modify a defendant's sentence upon a motion of either: (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) factors warrant reduction." *United States v. Hunter*, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)). "If any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements." *Id*. (citing *Keitt*, 21 F.4th at 72–73); *cf. United States v. Torres*, No. 16-CR-0500, 2022 WL 538323, at *2 (S.D.N.Y. Feb. 23, 2022) ("Before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies.") (quoting *United States v. Williams-Bethea*, 464 F. Supp. 3d 562, 565 (S.D.N.Y. 2020)).

---

had previously denied Petitioner's original §2255 motion, *see*, 11-CR-309, Dkt. No. 104, p.2; 12-CR-305, Dkt. No. 142. P.2, and on that basis, the Government argues that the motion is unauthorized, and time barred. *Id*., at pp. 3-6.   The government is wrong. Although the handwritten *pro se* Motion for Compassionate Release is hardly a model of clarity and substance, it is clearly not a second or successive §2255 motion.

Assuming exhaustion has been established, courts have discretion under the First Step Act to grant compassionate release when (1) there are "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Canales*, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). District Courts can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020); see *id*. at 236 (finding that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling"). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason.'" *Id*. at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)).

Finally, even if exhaustion is established and extraordinary and compelling reasons are found to exist, the Court must also "consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and

17

compelling circumstances." *United States v. Davies*, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted). ("Even if extraordinary and compelling reasons exist, they must outweigh the [Section] 3553(a) [F]actors to warrant sentence reduction." (citing 18 U.S.C. § 3582(c)(1)(A))). The defendant bears the burden of proving that he is entitled to compassionate release. *See United States v. Earlsey*, 568 F. Supp. 3d 298, 301 (W.D.N.Y. 2021).

### B.  Legal Analysis

Because Epps is now proceeding *pro se*, the Court will construe his motion liberally, interpreting it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation omitted); *Donaldson v. United States*, 2018 WL 703102, at *2. But, as the moving party, Epps still bears the burden of demonstrating his entitlement to early release. *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); accord *United States v. Earlsey*, 568 F. Supp. 3d at 301. In other words, Epps must show that: (1) he has exhausted his administrative remedies; (2) extraordinary and compelling reasons warrant reduction of his sentence; and (3) the applicable sentencing factors, on balance, do not cut against such reduction.

Here, even construing his allegations in his favor, Epps filings fail even to mention—much less establish—any of these three factors.  As such, Epps has failed to demonstrate—as he must—that he has exhausted his administrative remedies;

Epps has failed to establish—as he must—that extraordinary and compelling reasons warrant reduction of his sentence; and finally, Epps has failed to establish—as he must—that the applicable sentencing factors under §3553(a) do not, on balance, cut against any reduction.  Based on those deficiencies, his motion for compassionate release is denied.

## **CONCLUSION**

For the reasons stated above, Epps' § 2255 Motion (11-CR-309, Dkt. No. 81; 12-CR-305, Dkt. No. 122), is **DENIED**; and Epps' Motion for Compassionate Release (11-CR-309, Dkt. No. 101; 12-CR-305, Dkt. No. 139) is also **DENIED**.  Further, pursuant to 28 U.S.C. § 2253(c)(1) and Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability because Epps has not made a substantial showing of the denial of a constitutional right. Finally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from this decision would not be taken in good faith. Thus, leave to appeal *in forma pauperis* is denied. Epps is advised that "Federal Rule of Appellate Procedure 4(a) governs the time to appeal," and "[a] timely notice of appeal must be filed even" though the Court declined to issue a certificate of appealability. Rule 11(b) of the Rules Governing Section 2255 Proceedings.

**IT IS SO ORDERED.**

*s/Richard J. Arcara*
HONORABLE RICHARD J.  ARCARA
SENIOR U.S. DISTRICT JUDGE

Dated:  February 13, 2024
      Buffalo, New York.